UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

ANNETTE M. CONTO,
Plaintiff,

FILED

OCT 28 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

v.

VERONA PHARMA plc,
Defendant.

Case No.: 1:25-cv-00292-CEA-MJD

# FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, PROMISSORY ESTOPPEL, WRONGFUL TERMINATION, EMPLOYMENT DISCRIMINATION, RETALIATION, CONSPIRACY, FCRA VIOLATIONS, AND OTHER RELIEF

DEMAND FOR JURY TRIAL

Plaintiff Annette M. Conto (hereinafter "Plaintiff"), in propria persona, brings this First Amended Complaint against Defendant Verona Pharma plc (hereinafter "Defendant"), seeking declaratory relief, damages, and equitable remedies arising from Defendant's unlawful rescission of a formal employment offer, breach of contract, detrimental reliance induced by Defendant's promises, wrongful termination in violation of public policy, employment discrimination, retaliation, conspiracy, violations of the Fair Credit Reporting Act, and other tortious conduct. Plaintiff alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

**1.** Plaintiff Annette M. Conto is an individual who is domiciled in Ooltewah, Hamilton County, Tennessee. Plaintiff is in Tennessee territory. Plaintiff possesses a valid United States passport and maintains a Foreign Grantor Trust with a properly assigned Employer Identification Number (EIN) by the Internal Revenue Service, which she utilizes for lawful tax filing purposes.

**2.** Defendant Verona Pharma plc is, upon information and belief, a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 8529

Six Forks Road Suite 400, Raleigh, NC 27615. Defendant conducts business within the State of Tennessee and this judicial district. Defendant further serves as a withholding agent for the Internal Revenue Service pursuant to 26 U.S.C. § 1441, thereby performing a quasi-governmental function with respect to tax collection and compliance.

**3.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity jurisdiction), as the parties reside within different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.[1]

**4.** This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), as Plaintiff's claims arise under the laws of the United States, including but not limited to 8 U.S.C. §1503(a), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*), and 26 U.S.C. § 7212(a).[2]

**5.** This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, as they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.[3]

**6.** Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as Defendant resides within this district (by virtue of conducting substantial business herein) and a substantial part of the events or omissions giving rise to the claims occurred within this district.[4]

# FACTUAL ALLEGATIONS

## Employment Offer and Acceptance

**8.** On or about May 12, 2025, Defendant, through its authorized agent Eron Swann, Associate Director Access & Reimbursement, extended a verbal offer of employment to Plaintiff for the position of Senior Manager, Field Access. Later, a formal written offer of employment was sent on May 12, 2025 via email to Plaintiff by Amelia Winter, Associate Director, Talent Acquisition.

**9.** The offer included specific terms of employment, including an annual base salary of $160,000.00, benefits including health insurance, 401(k) participation, and paid time off, and a scheduled start date of June 2, 2025.

[1] See *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (confirming that the amount-in-controversy requirement is satisfied when a single plaintiff's claims exceed $75,000).

[2] Federal question jurisdiction exists when a plaintiff's cause of action is created by federal law or turns on a substantial question of federal law. See *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

[3] Supplemental jurisdiction is appropriate when state law claims "form part of the same case or controversy" as the federal claims. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[4] For venue purposes, a corporate defendant "resides" in any judicial district where it is subject to personal jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

**10.** Plaintiff duly accepted Defendant's offer of employment in writing on May 12, 2025, thereby forming a valid and binding employment agreement.[5]

**11.** At the time Defendant extended the offer of employment, Defendant was aware that Plaintiff would need to resign from her then-current position and specifically required her to do so in order to commence employment on June 2, 2025.

**12.** In reasonable reliance upon Defendant's firm offer of employment, Plaintiff resigned from her then-current position as Practice Access Manager at Blink Health, with her final day of employment being May 23, 2025.

**13.** Upon information and belief, at the time Defendant extended the offer of employment, Defendant was aware of its internal policies regarding tax documentation requirements but failed to disclose to Plaintiff any requirement that she must submit a Form W-9 rather than a Form W-8BEN.

**14.** Upon information and belief, Defendant's Human Resources personnel, including Sierra Clement and Ostra Jewell, had not received adequate training regarding the proper handling of various tax forms, including Form W-8BEN, and the legal rights of individuals to determine their own tax status.

## W-8BEN Form Submission and Dispute

**15.** On or about May 21, 2025, Plaintiff inquired with Defendant's recruiter, Justin Seller, regarding the appropriate procedure for submitting her required new hire documentation, including Form W-8BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding and Reporting) and Form I-9 (Employment Eligibility Verification).

**16.** Plaintiff submitted on May 21, 2025, a completed Form W-8BEN, asserting her status as a foreign beneficial owner for U.S. tax withholding purposes and providing her Foreign Grantor Trust Employer Identification Number (EIN) associated with her name, Annette M. Conto.[6]

**17.** The Form W-8BEN submitted by Plaintiff was complete, accurate, and properly executed in accordance with Internal Revenue Service regulations and guidelines.

**18.** Plaintiff also submitted a completed Form I-9, utilizing her valid United States passport as documentation for List A employment verification, consistent with federal requirements.[7]

---

[5] Under Tennessee law, an offer letter can create a binding employment contract when it contains definite terms and is accepted by the employee. See *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003).

[6] The Internal Revenue Service permits individuals to submit Form W-8BEN to establish foreign status for tax purposes under certain circumstances. See IRS Publication 515, "Withholding of Tax on Nonresident Aliens and Foreign Entities" (2025).

[7] The Immigration Reform and Control Act of 1986 (IRCA) requires employers to verify the identity and employment eligibility of all individuals hired in the United States. A U.S. passport is an acceptable List A document that establishes both identity and employment authorization. See 8 C.F.R. § 274a.2(b)(1)(v)(A)(1).

**19.** Defendant's Human Resources personnel, including Sierra Clement, expressed confusion regarding Plaintiff's submitted tax forms and indicated a lack of understanding concerning the validity and applicability of Form W-8BEN in Plaintiff's circumstances.

**20.** On or about May 27, 2025, Defendant's Senior Vice President of Human Resources, Ostra Jewell, contacted Plaintiff and expressly stated that Plaintiff "was hired on the notion of being a US citizen in which [she] would be using [her] Social Security#." Ms. Jewell implied that Plaintiff was required to utilize a Social Security Number and submit a Form W-9 (Request for Taxpayer Identification Number and Certification) to maintain her employment with Defendant.

**21.** Ms. Jewell informed Plaintiff that Ms. Clement would resend the "correct" tax forms (implying Form W-9) on Plaintiff's scheduled start date of June 2, 2025. Plaintiff, under duress and fearing the loss of her employment, acquiesced to this directive at that time.[8]

**22.** By demanding that Plaintiff submit a Form W-9 rather than a Form W-8BEN, Defendant was effectively requiring Plaintiff to make a potentially false certification under penalty of perjury, as the Form W-9 requires the signer to certify that they are a U.S. person for federal tax purposes.

**23.** Upon information and belief, Defendant's insistence on Form W-9 rather than Form W-8BEN was motivated by discriminatory animus related to Plaintiff's assertion of her rights as a national to determine her own tax status.

## Background Check Process and FCRA Violations

**24.** As part of the pre-employment process, Plaintiff authorized Defendant to conduct a background check through Checkr, Inc., a consumer reporting agency as defined under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(f).

**25.** Upon information and belief, Defendant received the background check report from Checkr on or about May 17, 2025.

**26.** The background check report contained minor discrepancies regarding Plaintiff's employment history, specifically a variation in job title at Blink Health ("Practice Access Manager" vs. "Associate Practice Access Manager") and a discrepancy in start date (September 2023 vs. April 2024).

**27.** Defendant failed to provide Plaintiff with a copy of the consumer report and a written description of her rights under the FCRA before taking adverse action based in whole or in part on the report, as required by 15 U.S.C. § 1681b(b)(3)(A).

[8] Economic duress can invalidate consent when a party is forced to agree to terms due to wrongful threats or conduct by the other party. See *Crocker v. Hillsboro Manor Nursing Home, Inc.*, 492 S.W.2d 250, 254 (Tenn. Ct. App. 1973).

**28.** Defendant failed to provide Plaintiff with a reasonable period of time to dispute the information in the report before taking adverse action, as required by 15 U.S.C. § 1681b(b)(3)(A) and established case law[9]

**29.** Defendant's failure to comply with the FCRA's pre-adverse action notification requirements deprived Plaintiff of her statutory right to dispute and correct any inaccuracies in the consumer report before Defendant took adverse action.

## Rescission of Employment Offer

**30.** On May 30, 2025 (Friday), merely three days prior to Plaintiff's scheduled start date, Ms. Jewell contacted Plaintiff via telephone and abruptly informed her that Defendant was rescinding the formal offer of employment.

**31.** The stated reasons proffered by Ms. Jewell for the rescission were alleged discrepancies between Plaintiff's resume submitted via the Greenhouse application system and information obtained through the third-party background check conducted by Checkr. Specifically, Defendant cited a minor variation in Plaintiff's prior job title at Blink Health ("Practice Access Manager" vs. "Associate Practice Access Manager") and a discrepancy in the start date listed on the resume (September 2023 vs. the actual start date of April 2024).

**32.** Plaintiff acknowledged the date discrepancy, attributing it to an error generated by an AI resume tool, and offered to provide immediate verification of her correct job title as Practice Access Manager directly from her former manager at Blink Health, Pam Lim.

**33.** Despite Plaintiff's explanation and offer of verification, Defendant, through Ms. Jewell, refused to investigate further or consider the mitigating circumstances. Ms. Jewell characterized the discrepancies as raising "red flags" concerning "integrity and accuracy" and deemed the issue potentially "unfixable."

**34.** Although Ms. Jewell initially mentioned a purported five-day period for Plaintiff to provide documentation (a provision Plaintiff could not locate in any employment agreement), Ms. Jewell ultimately stated during the same May 30, 2025 phone call that Defendant "would rescind the offer" based on the alleged inaccuracies.

**35.** Defendant failed to provide Plaintiff with any formal written notice rescinding the offer of employment at the time; however, on June 6, 2025, Plaintiff received a letter officially rescinding employment based on "false information on the resume" and "information in a consumer report".

---

[9]See *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001) (holding that a reasonable period must be afforded to dispute consumer report information before adverse action is taken).

**36.** The timing and nature of Defendant's actions strongly suggest that the stated reasons for rescission (minor resume discrepancies) were pretextual, and the actual motivating factor was Plaintiff's assertion of her right to utilize Form W-8BEN and her chosen tax classification status.[10]

**37.** The temporal proximity between Plaintiff's submission of Form W-8BEN (May 21, 2025), Defendant's expression of confusion and disapproval regarding the form (May 27, 2025), and the rescission of the employment offer (May 30, 2025) further supports the inference that the rescission was motivated by discriminatory animus related to Plaintiff's tax status choice.

## Conspiracy Among Corporate Officers

**38.** Upon information and belief, multiple corporate officers of Defendant, including but not limited to Ostra Jewell (Senior Vice President of Human Resources), Kristen Anderson (Senior Legal Counsel), and David Zaccardelli (Chief Executive Officer), acted in concert to rescind Plaintiff's employment offer based on her submission of Form W-8BEN and assertion of her right to determine her own tax status.

**39.** Upon information and belief, these corporate officers communicated with each other regarding Plaintiff's tax form submission and collectively decided to rescind the employment offer rather than honor Plaintiff's lawful choice of tax status.

**40.** Upon information and belief, the conspiracy among these corporate officers was motivated by discriminatory animus related to Plaintiff's national status and tax classification.

**41.** The coordinated action of these corporate officers resulted in the deprivation of Plaintiff's equal rights to contract and employment.

## Impact on Plaintiff

**42.** As a direct and proximate result of Defendant's unlawful rescission of the employment offer, Plaintiff has suffered significant damages.

**43.** Plaintiff detrimentally relied on Defendant's promise of employment by resigning from her stable position at Blink Health, thereby losing her income, benefits, and employment security.[11]

**44.** Plaintiff incurred financial and logistical commitments in anticipation of commencing employment with Defendant, including but not limited to relocation expenses, professional attire purchases, and childcare arrangements.

---

[10] Courts recognize that timing and sequence of events can establish pretext in employment cases. See *Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) (noting that temporal proximity between protected activity and adverse action can suggest pretext).

[11] Detrimental reliance is a key element of promissory estoppel claims. See *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982).

**45.** Plaintiff has suffered, and continues to suffer, substantial economic losses, including lost wages and benefits, calculated as follows:

- Base annual salary of $160,000.00 ($13,333.33 per month)
- Health insurance and other benefits valued at approximately $2,500.00 per month
- Total monthly compensation package of approximately $15,833.33.00
- Projected lost compensation from June 2, 2025, through the date of judgment

**46.** Plaintiff has suffered, and continues to suffer, significant non-economic damages, including:

- Severe emotional distress, anxiety, and depression
- Humiliation and loss of self-esteem
- Sleep disturbances and physical manifestations of stress
- Damage to professional reputation and career trajectory
- Strained personal relationships due to financial stress

**47.** Plaintiff has been unable to secure comparable employment despite diligent efforts, exacerbating both her economic and non-economic damages.

**48.** Plaintiff's professional reputation has been damaged by Defendant's false implications regarding her integrity and honesty, potentially affecting her future employment prospects.

# CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT UNDER 8 U.S.C. §1503(a)

**49.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**50.** Pursuant to 8 U.S.C. §1503(a), any person within the United States who claims a right or privilege as a national of the United States and is denied such right or privilege by any department, agency, or official thereof, on the ground that they are not a national of the United States, may institute an action for a judgment declaring them to be a national of the United States.

**51.** Plaintiff is a national of the United States, as evidenced by her valid United States passport.

**52.** As a national of the United States, Plaintiff possesses the right to determine her tax status and classification in accordance with applicable federal law, including the right to submit Form W-8BEN when appropriate to her circumstances.

**53.** Defendant, acting in its capacity as a withholding agent for the Internal Revenue Service pursuant to 26 U.S.C. § 1441, performs a quasi-governmental function with respect to tax collection and compliance.[12]

**54.** Defendant denied Plaintiff's right and privilege as a national to determine her own tax status by (a) expressing confusion and disapproval regarding her submission of Form W-8BEN, (b) insisting that she was "hired on the notion of being a US citizen" who must use a Social Security Number, (c) demanding that she submit Form W-9 instead of Form W-8BEN, and (d) ultimately rescinding her employment offer after she asserted her right to utilize Form W-8BEN.

**55.** Defendant's denial of Plaintiff's right to determine her tax status was based on the erroneous ground that, as a U.S. national, she could not properly utilize Form W-8BEN or claim foreign beneficial owner status for tax purposes.

**56.** Plaintiff seeks a declaratory judgment that, as a national of the United States, she possesses the right to determine her tax status in accordance with applicable federal law, including the right to submit Form W-8BEN when appropriate to her circumstances, and that Defendant's denial of this right was unlawful.

## COUNT II: BREACH OF CONTRACT

**57.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**58.** On May 12, 2025, Defendant extended a formal written offer of employment to Plaintiff, which Plaintiff duly accepted in writing, thereby forming a valid and binding employment agreement under Tennessee law.[13]

**59.** The employment agreement contained definite terms, including but not limited to position title, salary, benefits, and start date.

**60.** Plaintiff satisfied all conditions precedent to the employment agreement, including but not limited to accepting the offer in writing, submitting required documentation, and preparing to commence employment on the specified start date.

**61.** The employment agreement contained no provision requiring Plaintiff to submit a specific tax form (e.g., Form W-9) or prohibiting the submission of Form W-8BEN.

---

[12] Private entities performing governmental functions may be subject to constitutional constraints. See *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 397-400 (1995) (holding that Amtrak, though nominally private, was a governmental entity for constitutional purposes).

[13] See *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003) (holding that an offer letter containing definite terms of employment creates a binding contract when accepted).

**62.** The employment agreement contained no provision stating that minor discrepancies in employment history would constitute grounds for rescission.

**63.** Defendant materially breached the employment agreement by rescinding the offer of employment without valid justification three days before Plaintiff's scheduled start date.

**64.** Defendant's purported reasons for rescission—minor discrepancies in Plaintiff's employment history—were pretextual and did not constitute valid grounds for rescission under the terms of the employment agreement or Tennessee contract law.

**65.** Every contract governed by Tennessee law includes an implied covenant of good faith and fair dealing[14]

**66.** Defendant breached the implied covenant of good faith and fair dealing by:

- Rescinding the employment offer based on pretextual reasons;
- Refusing to consider Plaintiff's explanations or verification offers regarding minor resume discrepancies;
- Using minor discrepancies as a pretext to avoid employing Plaintiff after she submitted Form W-8BEN;
- Failing to disclose material information regarding tax form requirements at the time of offer;
- Failing to follow its own stated procedures for addressing discrepancies (i.e., the purported five-day period for documentation).

**67.** As a direct and proximate result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, and non-economic damages.

## COUNT III: PROMISSORY ESTOPPEL

**68.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**69.** Defendant made a clear and unambiguous promise of employment to Plaintiff through its formal written offer dated May 12, 2025.

**70.** Defendant reasonably expected or should have reasonably expected that its promise would induce action or forbearance on Plaintiff's part.

[14] See *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (recognizing that Tennessee law imposes a duty of good faith and fair dealing in the performance of contracts).

**71.** Defendant knew or should have known that Plaintiff would need to resign from her then-current position at Blink Health in order to accept Defendant's offer of employment.

**72.** Plaintiff reasonably relied on Defendant's promise to her substantial detriment by resigning from her stable position at Blink Health, thereby losing her income, benefits, and employment security.[15]

**73.** Plaintiff's reliance was both reasonable and foreseeable given the definite nature of Defendant's employment offer and the common understanding that accepting a new position typically requires resigning from one's current employment.

**74.** Plaintiff's reliance was also foreseeable given that Defendant specifically required Plaintiff to be available for employment on June 2, 2025, necessitating her resignation from Blink Health.

**75.** Injustice can only be avoided by enforcing Defendant's promise through an award of damages sufficient to place Plaintiff in the position she would have occupied had Defendant fulfilled its promise.[16]

**76.** As a direct and proximate result of Plaintiff's detrimental reliance on Defendant's promise, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, and non-economic damages.

## COUNT IV: WRONGFUL TERMINATION/RESCISSION IN VIOLATION OF PUBLIC POLICY

**77.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**78.** Tennessee law recognizes a cause of action for wrongful termination when an employee is discharged in violation of a clear public policy.[17]

**79.** This cause of action extends to situations where an employer rescinds an accepted offer of employment in violation of public policy.[18]

[15] See *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (establishing that detrimental reliance is a key element of promissory estoppel claims).

[16] See *Goff-Hamel v. Obstetricians & Gynecologists, P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999) (recognizing promissory estoppel in employment context where employer knew employee would resign from current position).

[17] See *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984) (recognizing a cause of action for retaliatory discharge when an employee is terminated in violation of a clear public policy).

[18] See *Burbach v. Investors Management Corp.*, 326 N.C. 727, 392 S.E.2d 386 (1990) (recognizing that wrongful termination principles can apply to rescission of employment offers in certain circumstances).

**80.** Defendant's rescission of Plaintiff's employment offer violated multiple clear public policies, including but not limited to:

- The public policy favoring truthful tax filings and prohibiting the submission of false information to the Internal Revenue Service;
- The public policy protecting individuals' rights to determine their own tax status in accordance with federal law;
- The public policy against discrimination based on national origin or tax status;
- The public policy favoring fair credit reporting and proper pre-adverse action procedures;
- The public policy against retaliating against individuals for exercising their legal rights.

**81.** By demanding that Plaintiff submit Form W-9 rather than Form W-8BEN, Defendant was effectively requiring Plaintiff to potentially make a false certification under penalty of perjury, as Form W-9 requires the signer to certify that they are a U.S. person for federal tax purposes.

**82.** Plaintiff's refusal to submit a potentially false Form W-9 and assertion of her right to submit Form W-8BEN constituted protected activity under public policy.

**83.** Defendant's rescission of Plaintiff's employment offer after she engaged in this protected activity constituted wrongful termination/rescission in violation of public policy[19]

**84.** As a direct and proximate result of Defendant's wrongful termination/rescission in violation of public policy, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, and non-economic damages.

## COUNT V: EMPLOYMENT DISCRIMINATION (TITLE VII – NATIONAL ORIGIN)

**85.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**86.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits employment discrimination on the basis of national origin.

**87.** Plaintiff is a member of a protected class based on her national origin.

**88.** Plaintiff was qualified for the position of Senior Manager, Field Access, as evidenced by Defendant's extension of an employment offer to her.

[19] See *Brandon v. Anesthesia & Pain Management Associates*, 277 F.3d 936, 941 (7th Cir. 2002) (recognizing that termination for refusing to violate federal law constitutes wrongful termination in violation of public policy).

**89.** Plaintiff suffered an adverse employment action when Defendant rescinded her employment offer three days before her scheduled start date.

**90.** The circumstances surrounding the rescission give rise to an inference of discrimination based on national origin, as evidenced by:

- Defendant's explicit statement that Plaintiff "was hired on the notion of being a US citizen";
- Defendant's confusion and disapproval regarding Plaintiff's submission of Form W-8BEN, which is inherently tied to national status;
- The temporal proximity between Plaintiff's submission of Form W-8BEN and the rescission of her employment offer;
- Defendant's use of pretextual reasons (minor resume discrepancies) to justify the rescission.

**91.** Discrimination based on tax status can constitute national origin discrimination when tax status is used as a proxy for national origin or is inherently tied to national status.[20]

**92.** Upon information and belief, Defendant has a pattern or practice of discriminating against individuals who submit Form W-8BEN rather than Form W-9, which has a disparate impact on individuals with connections to foreign entities or non-traditional tax statuses.

**93.** As a direct and proximate result of Defendant's national origin discrimination, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

**94.** Defendant's discriminatory actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

## COUNT VI: ATTEMPTED SUBORNATION OF PERJURY (18 U.S.C. § 1622)

**95.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**96.** 18 U.S.C. § 1622 prohibits the subornation of perjury, which occurs when a person procures another to commit perjury.

**97.** Form W-9 requires the signer to certify under penalty of perjury that they are a U.S. person for federal tax purposes.

---

[20]See *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 92 (1973) (recognizing that discrimination based on proxies for protected characteristics can be actionable under Title VII).

**98.** Based on Plaintiff's circumstances and her Foreign Grantor Trust status, signing Form W-9 would have potentially constituted a false certification under penalty of perjury.

**99.** Defendant, through its Senior Vice President of Human Resources Ostra Jewell, attempted to procure Plaintiff to sign Form W-9 despite Plaintiff's proper submission of Form W-8BEN.

**100.** Defendant's attempt to force Plaintiff to sign Form W-9 constituted an attempt to suborn perjury in violation of 18 U.S.C. § 1622.

**101.** While 18 U.S.C. § 1622 is a criminal statute, Tennessee law recognizes a civil cause of action for wrongful termination when an employee is discharged for refusing to participate in illegal activities.[21]

**102.** Defendant's rescission of Plaintiff's employment offer after she refused to submit a potentially false Form W-9 constituted wrongful termination/rescission in violation of public policy against perjury and false statements to government agencies.

**103.** As a direct and proximate result of Defendant's attempted subornation of perjury and subsequent wrongful termination/rescission, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, and non-economic damages.

## COUNT VII: RETALIATION UNDER TITLE VII (42 U.S.C. § 2000e-3(a))

**104.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**105.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), prohibits retaliation against individuals who oppose discriminatory practices or assert their rights under the statute.

**106.** Plaintiff engaged in protected activity when she:

- Submitted Form W-8BEN asserting her lawful tax status;
- Objected to Defendant's discriminatory requirement that she submit Form W-9 instead;
- Asserted her right to determine her own tax status without discrimination.

**107.** Defendant took adverse action against Plaintiff by rescinding her employment offer three days before her scheduled start date.

---

[21] See *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 824 (Tenn. 1994) (recognizing a cause of action for retaliatory discharge when an employee is terminated for refusing to participate in illegal activities).

**108.** A causal connection exists between Plaintiff's protected activity and the adverse action, as evidenced by:

- The temporal proximity between Plaintiff's submission of Form W-8BEN (May 21, 2025), Defendant's expression of disapproval regarding the form (May 27, 2025), and the rescission of the employment offer (May 30, 2025);
- Defendant's explicit statement that Plaintiff "was hired on the notion of being a US citizen" who would use a Social Security Number;
- Defendant's use of pretextual reasons (minor resume discrepancies) to justify the rescission.

**109.** The Supreme Court has held that the anti-retaliation provision of Title VII covers any employer action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."[22]

**110.** Rescinding an employment offer after an individual asserts their right to determine their tax status without discrimination would dissuade a reasonable worker from making or supporting a charge of discrimination.

**111.** As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

**112.** Defendant's retaliatory actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

## COUNT VIII: INTERFERENCE WITH RIGHTS UNDER 42 U.S.C. § 1981

**113.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**114.** 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts as is enjoyed by white citizens.

**115.** The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

**116.** Section 1981 prohibits discrimination in the formation and enforcement of contracts based on race, ancestry, and ethnicity, and has been interpreted to encompass certain forms of national origin discrimination that affect contractual relationships.[23]

---

[22] See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (establishing the standard for retaliation claims under Title VII).

[23] See *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (recognizing that § 1981 prohibits discrimination based on ancestry or ethnic characteristics).

**117.** Plaintiff entered into a contractual relationship with Defendant through the offer and acceptance of employment.

**118.** Defendant interfered with Plaintiff's right to make and enforce this contract by rescinding the employment offer based on her tax status, which is connected to her national status.

**119.** Defendant's interference with Plaintiff's contractual rights was based on discriminatory animus related to her assertion of rights connected to her national status.

**120.** Section 1981 encompasses retaliation claims, and Defendant's rescission of Plaintiff's employment offer after she asserted her right to determine her tax status constituted unlawful retaliation under § 1981[24]

**121.** As a direct and proximate result of Defendant's interference with Plaintiff's rights under § 1981, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

**122.** Defendant's discriminatory actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

## COUNT IX: VIOLATION OF 42 U.S.C. § 1985(3) – CONSPIRACY TO DEPRIVE EQUAL PROTECTION

**123.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**124.** 42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws or equal privileges and immunities under the laws.

**125.** Multiple corporate officers of Defendant, including but not limited to Ostra Jewell (Senior Vice President of Human Resources), Kristen Anderson (Senior Legal Counsel), and David Zaccardelli (Chief Executive Officer), acted in concert to rescind Plaintiff's employment offer based on her submission of Form W-8BEN and assertion of her right to determine her own tax status.

**126.** Upon information and belief, these corporate officers communicated with each other regarding Plaintiff's tax form submission and collectively decided to rescind the employment offer rather than honor Plaintiff's lawful choice of tax status.

**127.** The conspiracy among these corporate officers was motivated by discriminatory animus related to Plaintiff's national status and tax classification.

[24] See *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that § 1981 encompasses retaliation claims).

**128.** Private conspiracies are actionable under § 1985(3) when motivated by discriminatory animus related to protected characteristics.[25]

**129.** The coordinated action of these corporate officers resulted in the deprivation of Plaintiff's equal rights to contract and employment.

**130.** As a direct and proximate result of Defendant's conspiracy to deprive Plaintiff of equal protection, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

**131.** Defendant's conspiratorial actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

## COUNT X: FAIR CREDIT REPORTING ACT VIOLATION (15 U.S.C. § 1681b(b)(3))

**132.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**133.** The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, regulates the collection, dissemination, and use of consumer information, including consumer reports used for employment purposes.

**134.** Defendant is an "employer" and a "user of consumer reports" as defined by the FCRA.

**135.** Plaintiff is a "consumer" as defined by the FCRA.

**136.** Checkr, Inc. is a "consumer reporting agency" as defined by the FCRA.

**137.** The background check report obtained by Defendant from Checkr is a "consumer report" as defined by the FCRA.

**138.** Pursuant to 15 U.S.C. § 1681b(b)(3)(A), before taking any adverse action based in whole or in part on a consumer report, an employer must provide the consumer with:

- A copy of the consumer report; and
- A description in writing of the consumer's rights under the FCRA.

[25] See *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (holding that § 1985(3) reaches private conspiracies motivated by discriminatory animus).

**139.** Courts have interpreted § 1681b(b)(3)(A) to require a reasonable period of time between providing the consumer report and taking adverse action, to allow the consumer an opportunity to discuss the report with the employer before adverse action is taken.[26]

**140.** Defendant received the background check report from Checkr on or about May 17, 2025.

**141.** Defendant took adverse action against Plaintiff on May 30, 2025, by rescinding her employment offer based in whole or in part on the consumer report.

**142.** Defendant failed to provide Plaintiff with a copy of the consumer report before taking adverse action.

**143.** Defendant failed to provide Plaintiff with a description in writing of her rights under the FCRA before taking adverse action.

**144.** Defendant failed to provide Plaintiff with a reasonable period of time between providing the consumer report and taking adverse action.

**145.** Defendant's violations of the FCRA were willful, as Defendant knew or should have known of its obligations under the FCRA as a regular user of consumer reports for employment purposes.[27]

**146.** As a result of Defendant's willful violations of the FCRA, Plaintiff is entitled to statutory damages of not less than 100*andnotmorethan*1,000, punitive damages, costs of the action, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n.

**147.** Alternatively, Defendant's violations of the FCRA were negligent, entitling Plaintiff to actual damages, costs of the action, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

## COUNT XI: VIOLATION OF 26 U.S.C. § 7212(a) – INTERFERENCE WITH ADMINISTRATION OF INTERNAL REVENUE LAWS

**148.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**149.** 26 U.S.C. § 7212(a) prohibits any person from corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue laws.

---

[26] See *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001); *Beverly v. Wal-Mart Stores, Inc.*, 2008 WL 149032, at *3 (E.D. Va. Jan. 11, 2008).

[27] See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (defining willfulness under the FCRA to include both knowing and reckless violations).

**150.** Defendant corruptly endeavored to obstruct or impede the due administration of the Internal Revenue laws by:

- Attempting to force Plaintiff to submit Form W-9 when she was legally entitled to submit Form W-8BEN;
- Expressing confusion and disapproval regarding Plaintiff's lawful submission of Form W-8BEN;
- Stating that Plaintiff "was hired on the notion of being a US citizen" who would use a Social Security Number;
- Rescinding Plaintiff's employment offer after she asserted her right to utilize Form W-8BEN.

**151.** Defendant's actions interfered with the proper administration of tax laws by attempting to force incorrect tax classifications and potentially false certifications.

**152.** While 26 U.S.C. § 7212(a) is primarily a criminal statute, courts have recognized its relevance in civil contexts when an employer coerces false filings or interferes with an individual's tax status choices.[28]

**153.** Tennessee law recognizes a civil cause of action for wrongful termination when an employee is discharged for refusing to participate in illegal activities, including violations of federal law.

**154.** Defendant's rescission of Plaintiff's employment offer after she refused to submit a potentially false Form W-9 constituted wrongful termination/rescission in violation of public policy against interference with tax administration.

**155.** As a direct and proximate result of Defendant's interference with the administration of Internal Revenue laws and subsequent wrongful termination/rescission, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, and non-economic damages.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**156.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**157.** Under Tennessee law, the elements of intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) conduct so outrageous that it is not tolerated by civilized society; and (3) conduct resulting in serious mental injury.[29]

---

[28] See *United States v. Winchell*, 129 F.3d 1093, 1098 (10th Cir. 1997) (discussing the broad scope of § 7212(a) in addressing interference with tax administration).

[29] See *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (setting forth the elements of intentional infliction of emotional distress).

**158.** Defendant engaged in intentional or reckless conduct by:

- Rescinding Plaintiff's employment offer three days before her scheduled start date, after she had already resigned from her previous position;
- Using pretextual reasons to justify the rescission;
- Refusing to consider Plaintiff's explanations or verification offers regarding minor resume discrepancies;
- Attempting to force Plaintiff to submit a potentially false Form W-9;
- Failing to comply with FCRA requirements before taking adverse action;
- Characterizing minor discrepancies as raising "red flags" concerning "integrity and accuracy."

**159.** Defendant's conduct was so outrageous that it is not tolerated by civilized society, particularly given:

- The timing of the rescission (three days before Plaintiff's scheduled start date);
- Defendant's knowledge that Plaintiff had resigned from her previous position in reliance on the offer;
- The pretextual nature of the stated reasons for rescission;
- The discriminatory motivation behind the rescission;
- The foreseeable severe emotional and financial impact on Plaintiff.

**160.** Defendant knew or should have known that its conduct would cause severe emotional distress to Plaintiff.

**161.** As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered serious mental injury, including but not limited to severe emotional distress, anxiety, depression, humiliation, loss of self-esteem, sleep disturbances, and physical manifestations of stress.

**162.** Defendant's outrageous conduct was undertaken with malice or reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

## COUNT XIII: TENNESSEE HUMAN RIGHTS ACT VIOLATION

**163.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**164.** The Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401 *et seq.*, prohibits discrimination in employment based on race, creed, color, religion, sex, age, or national origin.

**165.** The THRA is interpreted consistently with federal anti-discrimination laws, including Title VII of the Civil Rights Act of 1964.[30]

**166.** Plaintiff is a member of a protected class based on her national origin.

**167.** Plaintiff was qualified for the position of Senior Manager, Field Access, as evidenced by Defendant's extension of an employment offer to her.

**168.** Plaintiff suffered an adverse employment action when Defendant rescinded her employment offer three days before her scheduled start date.

**169.** The circumstances surrounding the rescission give rise to an inference of discrimination based on national origin, as evidenced by:

- Defendant's explicit statement that Plaintiff "was hired on the notion of being a US citizen";
- Defendant's confusion and disapproval regarding Plaintiff's submission of Form W-8BEN, which is inherently tied to national status;
- The temporal proximity between Plaintiff's submission of Form W-8BEN and the rescission of her employment offer;
- Defendant's use of pretextual reasons (minor resume discrepancies) to justify the rescission.

**170.** The THRA also prohibits retaliation against individuals who oppose discriminatory practices or assert their rights under the statute.

**171.** Plaintiff engaged in protected activity when she submitted Form W-8BEN asserting her lawful tax status and objected to Defendant's discriminatory requirement that she submit Form W-9 instead.

**172.** Defendant's rescission of Plaintiff's employment offer after she engaged in this protected activity constituted unlawful retaliation under the THRA.

**173.** As a direct and proximate result of Defendant's violations of the THRA, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

**174.** Defendant's discriminatory and retaliatory actions were undertaken with malice or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages.

---

[30] See *Parker v. Warren County Utility Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999) (noting that the THRA is interpreted consistently with Title VII).

## COUNT XIV: NEGLIGENT HIRING, TRAINING, AND SUPERVISION

**175.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**176.** Tennessee law recognizes a cause of action for negligent hiring, training, and supervision when an employer fails to exercise reasonable care in the hiring, training, or supervision of its employees.[31]

**177.** Defendant had a duty to exercise reasonable care in the hiring, training, and supervision of its Human Resources personnel, particularly regarding their understanding of tax documentation requirements, anti-discrimination laws, and the Fair Credit Reporting Act.

**178.** Defendant breached this duty by:

- Failing to adequately train Human Resources personnel, including Sierra Clement and Ostra Jewell, regarding the proper handling of various tax forms, including Form W-8BEN;
- Failing to adequately train Human Resources personnel regarding the legal rights of individuals to determine their own tax status;
- Failing to adequately train Human Resources personnel regarding FCRA requirements for pre-adverse action notifications;
- Failing to adequately supervise Human Resources personnel to ensure compliance with anti-discrimination laws and the FCRA.

**179.** Defendant knew or should have known that its Human Resources personnel lacked adequate training and supervision regarding these matters, as evidenced by:

- Ms. Clement's expressed confusion regarding Plaintiff's submitted tax forms;
- Ms. Jewell's erroneous statement that Plaintiff "was hired on the notion of being a US citizen" who must use a Social Security Number;
- Defendant's failure to comply with FCRA requirements before taking adverse action based on a consumer report.

**180.** As a direct and proximate result of Defendant's negligent hiring, training, and supervision, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

## COUNT XV: DEFAMATION

**181.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

[31] See *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (recognizing negligent hiring, training, and supervision as valid causes of action).

**182.** Under Tennessee law, defamation requires: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.[32]

**183.** Defendant published false and defamatory statements about Plaintiff by:

- Characterizing minor resume discrepancies as raising "red flags" concerning Plaintiff's "integrity and accuracy";
- Stating in the rescission letter dated June 6, 2025, that Plaintiff provided "false information on the resume";
- Communicating these false characterizations to third parties, including but not limited to Checkr, Inc. and potentially other employers in the pharmaceutical industry.

**184.** These statements were false, as the minor resume discrepancies were not intentional misrepresentations but rather inadvertent errors generated by an AI resume tool, and Plaintiff offered to provide immediate verification of her correct job title.

**185.** Defendant knew these statements were false or acted with reckless disregard for their truth, as evidenced by:

- Defendant's refusal to consider Plaintiff's explanation or verification offers;
- The pretextual nature of Defendant's stated reasons for rescission;
- The timing of the rescission in relation to Plaintiff's submission of Form W-8BEN.

**186.** These false statements have damaged Plaintiff's professional reputation and impaired her ability to secure comparable employment, as they impugn her integrity and honesty, qualities that are especially important in the pharmaceutical industry.

**187.** As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered damages, including but not limited to damage to her professional reputation, lost employment opportunities, and emotional distress.

## COUNT XVI: FRAUDULENT MISREPRESENTATION

**188.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**189.** Under Tennessee law, the elements of fraudulent misrepresentation are: (1) a misrepresentation of a material fact; (2) knowledge of the falsity or reckless disregard for the truth; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages.[33]

---

[32] See *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (setting forth the elements of defamation).

[33] See *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (setting forth the elements of fraudulent misrepresentation).

190. Defendant made material misrepresentations to Plaintiff by:

- Extending a firm offer of employment without disclosing any requirement that she must submit Form W-9 rather than Form W-8BEN;
- Representing that the employment offer was valid and binding when Defendant had no intention of honoring it if Plaintiff submitted Form W-8BEN;
- Falsely stating that minor resume discrepancies were the reason for rescinding the offer when the actual reason was Plaintiff's submission of Form W-8BEN.

191. Defendant knew these representations were false or made them with reckless disregard for their truth, as evidenced by:

- The temporal proximity between Plaintiff's submission of Form W-8BEN and the rescission of the employment offer;
- Ms. Jewell's statement that Plaintiff "was hired on the notion of being a US citizen" who would use a Social Security Number;
- Defendant's refusal to consider Plaintiff's explanation or verification offers regarding minor resume discrepancies.

192. Defendant made these misrepresentations with the intent to induce Plaintiff's reliance, specifically to induce her to resign from her then-current position at Blink Health and prepare to commence employment with Defendant.

193. Plaintiff justifiably relied on Defendant's misrepresentations by resigning from her position at Blink Health and making financial and logistical commitments in anticipation of commencing employment with Defendant.

194. As a direct and proximate result of Defendant's fraudulent misrepresentations and Plaintiff's justifiable reliance thereon, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

## COUNT XVII: NEGLIGENT MISREPRESENTATION

195. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

196. Under Tennessee law, the elements of negligent misrepresentation are: (1) the defendant supplied information to the plaintiff in the course of the defendant's business; (2) the defendant failed to exercise reasonable care in obtaining or communicating the information; (3) the plaintiff justifiably relied on the information; and (4) the plaintiff suffered damages as a result.[34]

[34] See *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (setting forth the elements of negligent misrepresentation).

**197.** In the alternative to Count XVI, Plaintiff alleges that Defendant negligently misrepresented material facts by:

- Extending a firm offer of employment without disclosing any requirement that she must submit Form W-9 rather than Form W-8BEN;
- Representing that the employment offer was valid and binding when Defendant had internal policies or practices that would prevent honoring it if Plaintiff submitted Form W-8BEN;
- Failing to disclose material information regarding tax form requirements at the time of offer.

**198.** Defendant failed to exercise reasonable care in obtaining or communicating this information, as evidenced by:

- The lack of any disclosure regarding tax form requirements in the offer letter or during the hiring process;
- Ms. Clement's expressed confusion regarding Plaintiff's submitted tax forms;
- The apparent lack of training among Human Resources personnel regarding the proper handling of various tax forms.

**199.** Plaintiff justifiably relied on Defendant's negligent misrepresentations by resigning from her position at Blink Health and making financial and logistical commitments in anticipation of commencing employment with Defendant.

**200.** As a direct and proximate result of Defendant's negligent misrepresentations and Plaintiff's justifiable reliance thereon, Plaintiff has suffered damages, including but not limited to lost wages and benefits, out-of-pocket expenses, emotional distress, and other non-economic damages.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Annette M. Conto respectfully requests that this Court enter judgment in her favor and against Defendant Verona Pharma plc, and grant the following relief:

**A.** A declaratory judgment that, as a national of the United States, Plaintiff possesses the right to determine her tax status in accordance with applicable federal law, including the right to submit Form W-8BEN when appropriate to her circumstances, and that Defendant's denial of this right was unlawful;

**B.** Compensatory damages for lost wages/bonuses and benefits for two(2) years in an amount to be determined at trial, but not less than $460,000.00, representing Plaintiff's annual compensation(salary/bonus) package of $200,000.00 in salary plus $30,000.00 in benefits for two years;

**C.** Front pay in lieu of reinstatement, calculated from the date of judgment until Plaintiff secures comparable employment or for a period of five years, whichever occurs first;

**D.** Compensatory damages for out-of-pocket expenses incurred in reliance on Defendant's offer of employment, in an amount to be determined at trial, but not less than $15,000.00;

**E.** Compensatory damages for emotional distress, humiliation, loss of self-esteem, damage to professional reputation, and other non-economic damages, in an amount to be determined at trial, but not less than $150,000.00;

**F.** Punitive damages in an amount to be determined at trial, but not less than $300,000.00, due to Defendant's willful, malicious, and reckless conduct;

**G.** Statutory damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, in an amount to be determined at trial, but not less than $1,000.00;

**H.** Prejudgment and post-judgment interest at the maximum rate allowed by law;

**I.** Costs of this action, including reasonable attorney's fees, expert witness fees, and other litigation expenses as authorized by 42 U.S.C. § 1988, Title VII of the Civil Rights Act of 1964, the Fair Credit Reporting Act, the Tennessee Human Rights Act, and other applicable law;

**J.** Injunctive relief requiring Defendant to:

- Implement comprehensive training for all Human Resources personnel regarding tax documentation requirements, including the proper handling of Form W-8BEN;
- Implement comprehensive training for all Human Resources personnel regarding Fair Credit Reporting Act requirements;
- Develop and implement policies prohibiting discrimination based on tax status or national origin;
- Submit to monitoring and reporting requirements regarding its hiring practices for a period of three years.

**K.** Such other and further relief as this Court deems just and proper.

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

ANNETTE M. CONTO
7277 McDaniel Lane
Ooltewah, TN 37363
407-694-6377
annetteconto@yahoo.com
*Plaintiff in propria persona*

Dated: October 27, 2025