**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| ANNETTE M CONTO, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:25-cv-292 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| VERONA PHARMA PLC, | ) | Magistrate Judge Dumitru |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 24] and Plaintiff's Motion for Status Conference and Scheduling Order [Doc. 29]. For reasons that follow, Defendant's Motion to Dismiss [Doc. 24] will be **GRANTED**, and this action **DISMISSED WITH PREJUDICE**. Plaintiff's Motion [Doc. 29] will be **DENIED AS MOOT**.

## I. INTRODUCTION

As a preliminary matter, the Court is compelled to address pro se Plaintiff Annette M. Conto's filings in this case and her broader litigation history in this District. Over the past year, Ms. Conto has filed five other lawsuits in this District, all premised on sovereign-citizen theories. *See Conto v. Citi Card Services*, 1:25-cv-293, *Conto v. Capital One NA*, 1:25-cv-319, *Conto v. CitiBank, N.A.*, 1:25-cv-320, *Conto v. Newrez LLC*, 1:25-cv-321, and *Conto v. National Credit Systems, Inc.*, 1:25-cv-347. Courts have long and consistently rejected such theories as frivolous. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) (finding that sovereign-citizen arguments "should be rejected summarily, however they are presented."). Yet Ms. Conto has continued to pursue them, despite the absence of any legitimate legal authority to support her arguments. Indeed, in one of her cases the Court recently dismissed, the Court addressed Ms.

Conto's pattern of frivolous filings at length and warned her that continued frivolous litigation could result in prefiling restrictions. *See Conto v. Newrez LLC*, 1:25-cv-321, [Doc. 28 at 27–28].

At first glance, this case might appear different. Plaintiff's Amended Complaint spans thirty pages, contains approximately 200 allegations, and asserts seventeen claims against Defendant. [Doc. 17]. And, to her credit, many of the familiar sovereign-citizen phrases that have appeared throughout Ms. Conto's prior filings are absent. But a closer look reveals that the theory has changed more in terminology than substance. This time, Ms. Conto principally contends that she is a member of a protected class as a "national of the United States" who possesses the right to determine her own federal tax status. [*Id.* at ¶ 56]. She further contends that by requiring her to sign a Form W-4 to complete the necessary steps for employment, Defendant committed subordination of perjury by requiring her to "certify under the penalty of perjury that [she is] a U.S. person for federal tax purposes." [*Id.* at 95–103]. In substance, then, Plaintiff again invokes meritless sovereign-citizen theories—this time in an attempt to avoid the implication of federal tax law when acquiring new employment.

Plaintiff compounds this problem in her response to Defendant's Motion to Dismiss. In an effort to lend legal support to her theories, Plaintiff repeatedly mispresents the authorities she cites. [*See generally* Doc. 25]. On at least six occasions, Plaintiff presents purported quotations that simply do not appear in the cited opinion. *Compare* [Doc. 25 at 3–5, 7, 11], *with McDonnell Douglas v. Green*, 411 U.S. 792 (1973), *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014); *Charton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1064 (6th Cir. 2022), *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), *Robertson v. Allied Sols.*, LLC, 902 F.3d 690, 697 (7th Cir. 2018), and *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). This is more than a mere misunderstanding of precedent or an imprecise citation. The authorities, as

Plaintiff presents them, do not say what Plaintiff claims they say. The result is an unnecessarily burdensome exercise for the Court: not only must the Court address all seventeen of Plaintiff's claims, rife with largely meritless arguments, but it must also sift through citations to legal propositions that Plaintiff has apparently manufactured, or more probably, obtained with the assistance of generative AI.

And Plaintiff does so while simultaneously asking the Court to expedite her case. In a Motion for Status Conference and Scheduling Order, Plaintiff declares that "[t]he expeditious administration of justice, a cornerstone of our jurisprudential system, necessitated proactive judicial management to prevent undue delay and ensure the timely resolution of disputes." [Doc. 29 at 1–2]. The Court certainly agrees that the prompt administration of justice is important. But prompt resolution also requires litigants to present claims and authorities that can be addressed without unnecessary detours. Between a thirty-page amended complaint, approximately 200 allegations, seventeen causes of action, and citations to cases that do not say what Plaintiff claims they say, Ms. Conto has given the Court rather more to sort through than her request for "expeditious" resolution might suggest.

The Court will not permit this conduct to continue. Pro se status does not excuse a litigant from complying with the Federal Rules of Civil Procedure or from accurately representing the law. *See* E.D. Tenn. Loc. R. 83.13. Nor does it permit a party to manufacture legal authority to support their claims, even if those claims have a basis in law. Because the Court's previous admonition to Ms. Conto regarding similar misconduct was issued after the relevant filings in this case, she is **AGAIN REMINDED** that if she continues to file frivolous complaints and motions, **<u>she will be deemed a vexatious litigant subject to prefiling restrictions</u>**. *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) (courts may properly enjoin vexatious litigants from filing

further actions without first obtaining leave of the court). Ms. Conto is further **WARNED** that future citations to fictitious authority or misrepresentation of actual authority may result in sanctions. Sanctions may include striking filings that contain improper citations of this nature or the payment by counsel of the opposing party's attorneys' fees reasonably incurred in responding to the offending filing.

The Court therefore addresses Plaintiff's claims—and the purported authorities on which she relies—with these considerations in mind.

## I. FACTUAL BACKGROUND

This case arises out of Plaintiff's pursuit of employment with Verona Pharma, Inc., a North Carolina corporation. On May 12, 2025, Defendant extended an offer of employment to Plaintiff for the role of Senior Manager, Field Access. [Doc. 17 at ¶ 8; Doc. 1 at Ex. A[1]]. The letter expressly indicated that the job offer was "contingent upon completion of a satisfactory background check and reference checks." [Doc. 1 at Ex. A]. Plaintiff, on the same day she received the offer, signed it, affirming that she accepted "the above conditional job offer" and that she understood her

[1] Ordinarily, a court may only consider matters outside the complaint when ruling on a Rule 12(b)(6) motion to dismiss by converting the motion into one for summary judgment. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). That said, certain categories of evidence do not fall within this general rule. Specifically, a court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion to dismiss into a motion for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here, Plaintiff attached eleven exhibits—spanning approximately seventy-seven pages—to her original Complaint, including the "Employment Offer Letter" central to her claims. [Doc. 1 at 18–95]. Although Plaintiff did not reattach these exhibits to her First Amended Complaint, she continues to rely on them in her allegations. [Doc. 17]. While an amended complaint ordinarily "supersedes the original complaint," courts liberally construe pro se filings and have considered exhibits attached to the original complaint when the amended complaint continues to rely on them. *See Jefferson v. Day*, No. 4:25-cv-30-BJB, 2026 U.S. Dist. LEXIS 68106, at *2 n.1 (W.D. Ky. Mar. 31, 2026) (internal citation omitted). The Court therefore considers the exhibits attached to Plaintiff's original Complaint to the extent she relies upon them in her First Amended Complaint.

employment with Defendant "is considered at-will, meaning that either the Company or [Plaintiff] may terminate this employment relationship at any time with or without cause or notice." [*Id.*]. In reliance on Defendant's job offer, Plaintiff resigned from her then-current place of employment on May 23, 2025. [Doc. 17 at ¶ 12].

As part of the onboarding process, Defendant required Plaintiff to submit new hire documentation, including various forms of identification and federal tax documents. [*Id.* at ¶¶ 15–23]. In response, Plaintiff submitted a Form I-9 on May 21, 2025, using a United States Passport as documentation for List A employment verification. [*Id.* at ¶ 17]. Plaintiff also provided a completed W-8BEN Form, reflecting her tax status as a "foreign beneficial owner for U.S. tax withholding purposes." [*Id.* at ¶ 16–18; Doc. 1 at Ex. C]. Plaintiff listed Tennessee as her "County of Citizenship" and certified that the "American Constitution" permitted her to claim a 0% rate of withholding as a "USC 1101 (22)b Nontaxable, private sector citizen, national of the United States." [Doc. 1 at Ex. C]. In short, Plaintiff claims she is a "U.S. National" who has a "federally protected right to be taxed in accordance with her proper status via a Form W-8BEN." [Doc. 25 at 1–2].

A significant problem arose when Defendant's HR team, unfamiliar with the use of a Form W-8BEN in this context, requested Plaintiff to submit her Social Security Number and a completed Form W-4[2] on her scheduled start date of June 2, 2025, to begin her employment with Defendant.

[2] Although Plaintiff alleges that Defendant requested a Form W-9, Plaintiff's exhibits, which include Plaintiff's communications with Defendant's HR team, clearly indicate that Defendant requested she submit a Form W-4. [Doc. 1 at Ex. C p. 28–29, 32–33]; *see Kenona Indus., LLC v. Perlane Sales, Inc.*, No. 1:23-cv-1227, 2024 U.S. Dist. LEXIS 194947, at *10–11 (W.D. Mich. Aug. 21, 2024) ("However, when an allegation in a pleading is inconsistent with an exhibit attached to the pleadings, the exhibit controls." (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012))).

[Doc. 17 at ¶¶ 19–23; Doc. 1 at Ex. C p. 28–29, 32–33]. Plaintiff, "under duress and fearing the loss of her employment, acquiesced to this directive at that time." [Doc. 17 at ¶ 21].

The problems did not end there. On May 17, 2025, Defendant identified discrepancies between Plaintiff's resume and the results of her completed background check. [*Id.* at ¶¶ 24–26]. Specifically, inconsistencies existed regarding Plaintiff's job title and start date at her prior employer, which Plaintiff now alleges was the result of "an error generated by an AI resume tool." [*Id.* at ¶¶ 26, 31–32]. On May 30, 2025, a member of Defendant's human resource personnel contacted Plaintiff via telephone informing her of the discrepancies and that Defendant "would rescind the offer" because of them. [*Id.* at ¶¶ 30–34]. Plaintiff subsequently received a letter from Defendant on June 6, 2025, officially rescinding the offer of employment based on "information contained in a consumer report and the false information in [Plaintiff's] resume about [her] prior employment." [*Id.* at ¶ 35; Doc. 1 at Ex. E]. Plaintiff alleges that the "timing and nature of Defendant's actions strongly suggest that the stated reasons for recission (minor resume discrepancies) were pretextual, and the actual motivating factor was Plaintiff's assertion of her right to utilize Form W-8BEN and her chosen tax classification status." [Doc. 17 at ¶¶ 36–37].

Based on these allegations, Plaintiff filed this pro se lawsuit on September 10, 2025, asserting six claims against Defendant. [Doc. 1]. Plaintiff subsequently filed her First Amended Complaint ("FAC") on October 28, 2025, now bringing seventeen causes of action, which include: (1) "Declaratory Judgment under 8 U.S.C. § 1503(a)," (2) "Breach of Contract," (3) "Promissory Estoppel," (4) "Wrongful Termination/Recission in Violation of Public Policy," (5) "Employment Discrimination (Title VII – National Origin)," (6) "Attempted Subornation of Perjury (18 U.S.C. § 1622)," (7) "Retaliation Under Title VII (42 U.S.C. § 2000e-3(a))," (8) "Interference with Rights under 42 U.S.C. § 1981," (9) "Violation of 42 U.S.C. § 1985(3) – Conspiracy to Deprive Equal

Protection," (10) "Fair Credit Reporting Act Violation (15 U.S.C. § 1681(b)(3))," (11) "Violation of 26 U.S.C. § 7212(a) – Interference with Administration of Internal Revenue Laws," (12) "Intentional Infliction of Emotional Distress," (13) "Tennessee Human Rights Act Violation," (14) "Negligent Hiring, Training, and Supervision," (15) "Defamation," (16) "Fraudulent Misrepresentation," and (17) "Negligent Misrepresentation," [Doc. 17 at ¶¶ 49–200]. Now, Defendant has moved to dismiss Plaintiff's FAC in its entirety. [Doc. 24].

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

Defendant seeks dismissal of Plaintiff's FAC [Doc. 17] in its entirety, arguing that "Plaintiff's fantastical [U.S. National] theory and her claims [] are legally baseless" and "irreparably flawed as a matter of law." [Doc. 24-1 at 1–2]. In her response, Plaintiff argues that the "central, unifying theme of the FAC is that Defendant extended a formal, lucrative offer of employment to Plaintiff, induced her significant and detrimental reliance on that promise, and then unlawfully rescinded the offer under a transparently pretextual justification after Plaintiff, a U.S. National, asserted her federally protected right to be taxed in accordance with her proper status via a Form W-8BEN." [Doc. 25 at 1–2].

Plaintiff's response in opposition [Doc. 25], however, fails to meaningfully address many of her claims, including her claim for declaratory judgment (Count 1), wrongful termination (Count 4), attempted subornation of perjury (Count 6), conspiracy (Count 9), interference with tax administration (Count 11), negligent hiring (Count 14), and negligent misrepresentation (Count 17). A plaintiff abandons claims by failing to raise them in a brief opposing a motion to dismiss the complaint. *Doe v. Bredesen*, 507 F.3d 998, 1007-8 (6th Cir. 2007) ("The district court correctly noted, however, that [Plaintiff] abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint."); *United States ex rel. Laughlin v. Radiation Therapy Servs., P.S.C.*, 148 F.4th 791, 802 (6th Cir. 2025) ("Because [plaintiff] has not defended either the law or the facts behind these counts, he has abandoned them."). Nonetheless, the Sixth Circuit has at times held that claims may not be dismissed <u>solely</u> because a plaintiff fails to respond to a motion to dismiss for failure to state a claim. *See Bangura v. Hansen*, 434 F.3d 487, 497 (6th Cir. 2006).

While it appears that Plaintiff has abandoned several of her claims, the Court will nonetheless explain why each claim in the FAC must be dismissed.

**a. Count One: Declaratory Judgment under 8 U.S.C. § 1503(a)**

Pursuant to 8 U.S.C. § 1503(a), Plaintiff "seeks a declaratory judgment that, as a national of the United States, she possesses the right to determine her tax status in accordance with applicable federal law." [Doc. 17 at ¶ 56].

Plaintiff's claim fails on its face, however, because Section 1503(a) does not authorize a plaintiff to sue anyone other than the head of a government department or agency that denies an individual a claimed right or privilege as a national of the United States. *See* 8 U.S.C. § 1503(a) (". . . such person may institute an action under the provisions of section 2201 of title 28, United States Code, against the head of such department or independent agency for a judgment . . ..."). Plaintiff cannot bring suit against Verona Pharma, Inc., under Section 1503(a) because it is a private party. And to the extent that Plaintiff has alleged a general claim for declaratory relief as to her tax status, it too must fail because the Declaratory Judgment Act is not available "with respect to federal taxes." 28 U.S.C. § 2201.

Accordingly, Plaintiff's Count One fails to state a claim for relief and must be **DISMISSED**.

**b. Count Two: Breach of Contract**

The gravamen of Plaintiff's FAC centers on Defendant's offer of employment to Plaintiff. Plaintiff alleges that "Defendant materially breached the employment agreement by rescinding the offer of employment without valid justification." [Doc. 17 at ¶ 63]. Defendant, in response, argues no enforceable contract existed between the parties because the employment offer was expressly

conditional and "contingent upon completion of a satisfactory background and reference checks." [Doc. 24-1 at 4–6].

Whether Tennessee or North Carolina contract law applies,[3] Plaintiff's claim for breach of contract must fail. Defendant's offer letter clearly provided that the offer of employment was "conditional" and "*contingent* upon completion of a satisfactory background check and reference checks." [Doc. 1 at Ex. A (emphasis added)]. Defendant rescinded that offer after its background check revealed inaccuracies in Plaintiff's reported employment history, which Plaintiff confirms in her own allegations. [*See* Doc. 17 at ¶¶ 31–32 ("Plaintiff acknowledged the date discrepancy, attributing it to an error generated by an AI resume tool . . ..").

Therefore, because the condition precedent[4]—a satisfactory background check and reference checks—was not satisfied, any contractual duties that may have arisen on Defendant's part ceased to exist. *See Carson v. Grassmann*, 182 N.C. App. 521, 523–25 (N.C. Ct. App. 2007) ("Here, the contract specifically provides that plaintiffs' 'offer is contingent on the sale of their existing residence.' As the sale of plaintiffs' existing residence did not occur, the contract never came into effect and, if plaintiffs did not act in bad faith, defendants, as promisees, acquired no

---

[3] The parties dispute whether Tennessee or North Carolina law governs Plaintiff's state-law contract claims. Plaintiff contends that Tennessee law applies, while Defendant relies on the offer letter's choice-of-law provision and maintains that North Carolina law governs. The Court need not resolve the issue, however, because Plaintiff's claims fail under either state's law.

[4] Under North Carolina law, a "condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance. Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability . . .." *In re Foreclosure of Goforth Properties*, Inc., 334 N.C. 369, 375 (N.C. 1993) (cleaned up). Under Tennessee law, a "condition precedent in a contract . . . must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies." *Harvey v. Turner*, No. M2014-00368-COA-R3-CV, 2015 WL 1451702, at *5 (Tenn. Ct. App. Mar. 26, 2015), *perm. app. denied* 2015 Tenn. LEXIS 638 (Tenn. Aug. 14, 2015) (cleaned up).

rights under the contract."); *Joiner v. Girod*, No. 85-124-II, 1985 Tenn. App. LEXIS 3288, *14–15 (Dec. 31, 1985) ("If this condition [precedent] was not met, that is, if the Joiners did not qualify to assume the Girods' present loan, the contractual obligations of the parties would cease to exist and the contract would no longer be enforceable."). Defendant, based on Plaintiff's own admission in her FAC, had a legally valid reason to withdraw its offer of employment under the terms of the letter. Although Plaintiff may believe her inconsistencies in her resume were only "minor discrepancies," Defendant had a legitimate reason to question the veracity of one of its potential employees. Defendant cannot be said to have acted in bad faith, or with improper motive, when it performed according to the terms of the offer letter. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996) ("Performance of a contract according to its terms cannot be characterized as bad faith in breach of the duty of good faith and fair dealing.").

And, even if the contract had been formed, it expressly provided for an at-will employment relationship between Plaintiff and Defendant. [*See* Doc. 1 at Ex. A]. North Carolina and Tennessee law both presume that an at-will employment relationship is terminable by either party at any time absent a contract for a definite term. *Miller v. Ruth's of North Carolina, Inc.*, 69 N.C. App. 672, 675 (N.C. Ct. App. 1984) ("In North Carolina it is a settled rule of law that 'employment for an indefinite term is regarded as an employment at will which may be terminated at any time by either party.' (internal citation omitted)); *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) ("Under [the at-will employment] doctrine, employment for an indefinite period of time may be terminated by either the employer or the employee at any time, for any reason, or for no reason at all."). Plaintiff does not allege any facts in the FAC that would plausibly overcome the at-will employment doctrine if one had been formed.

Accordingly, Plaintiff's Count Two fails to state a claim for relief and must be **DISMISSED**.

**c. Count Three: Promissory Estoppel**

Plaintiff alleges she reasonably relied on Defendant's promise of employment by resigning from her former position. [Doc. 17 at ¶¶ 68–76]. Like her breach-of-contract claim, Plaintiff's promissory estoppel claim fails as a matter of law under either North Carolina or Tennessee law.

Under North Carolina law, it is well-settled that "promissory estoppel cannot exist as an affirmative claim for relief." *Rockingham Cnty. v. NTE Energy, LLC*, No. 23 CVS 1504, 2024 WL 1628421, at *11 (N.C. Super. Apr. 15, 2024) (collecting cases). Thus, Plaintiff may not pursue a claim for promissory estoppel under North Carolina law.

Under Tennessee law, promissory estoppel is a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance [such that it is] binding if injustice can be avoided only by enforcement of the promise." *Jeffries v. United States Metal Powders, Inc.*, No. E2013-00521-COA-R3-CV, 2014 Tenn. App. LEXIS 22, at *17–18 (Tenn. Ct. App. 2014) (internal quotations and citation omitted). "Tennessee does not liberally apply the doctrine of promissory estoppel." *Id.* at *18. Here, reliance on a conditional offer, in which the condition is not met, is not reasonable. It is plainly not an unjust result for Defendant to rescind its offer of employment once Plaintiff did not satisfy the express term the offer was contingent upon. *See Hicks v. Chears*, No. M2019-01428-COA-R3-CV, 2021 Tenn. App. LEXIS 301, at *22 (Tenn. Ct. App. 2021) ("As a general rule, promissory estoppel cannot be used to vary the terms of a valid contract."). The Court finds that this is not one of the rare instances in which promissory estoppel must be used to avoid injustice.

Accordingly, Plaintiff's Count Three fails to state a claim for relief and must be **DISMISSED**.

**d. Count Four: Wrongful Termination/ Recission**

Plaintiff next asserts a claim for "wrongful termination/recission in violation of public policy." [Doc. 17 at ¶¶ 77–84]. However, both North Carolina and Tennessee limit wrongful termination claims to employees who were actually employed at-will. *See Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 626 (M.D.N.C. 2005) ("Wrongful discharge in violation of public policy in North Carolina applies only to at-will employees."); *Gager v. River Park Hosp.*, No. M2009-02165-COA-R3-CV, 2010 Tenn. App. LEXIS 664, at *12 (Tenn. Ct. App. 2010) ("The existence of an employer-employee relationship is an essential element of both a statutory and common law claim for retaliatory discharge."). As the Court explained above, Plaintiff's employment with Defendant was expressly contingent upon satisfactory background and reference checks. Once Defendant discovered the discrepancies between Plaintiff's resume and background checks, it had the right to revoke its offer of employment, so no employment relationship was ever created.

Accordingly, because no employment relationship existed between the parties, Plaintiff's Count Four fails to state a claim for relief and must be **DISMISSED**.

**e. Count Five: Title VII Employment Discrimination**

Plaintiff next relies on a legal theory that is as novel as it is flawed, claiming she was discriminated against based on her unidentified national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). [Doc. 17 at ¶¶ 85–94]. She alleges Defendant's "confusion and disapproval regarding Plaintiff's submission of Form W-8BEN, which is inherently tied to national status," was the real motivating factor in revoking its offer of

employment. [*Id.*]. Although Plaintiff conveniently omits any allegation as to her national origin, she believes Defendant used her tax status as a self-proclaimed "[n]ontaxable, private sector citizen, national of the United States" as a proxy for national origin discrimination. [Doc. 1 at Ex. C]. Plaintiff's outlandish claim is wholly without merit.

The EEOC "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. Yet Plaintiff identifies no national origin beyond her assertion that she is "a national of the United States" who is domiciled in Tennessee. [Doc. 17 at ¶¶ 1, 51]. In her onboarding documents, Plaintiff identified her "County of Citizenship" as "Tennessee," while simultaneously providing a United States passport to establish her employment eligibility. [Doc. 1 at Ex. C]. She makes no other allegations from which the Court might plausibly infer that she belongs to a protected class under Title VII's national-origin provision. *See Gilmore-Bey v. Meltser*, No. 24-1643, 2025 U.S. App. LEXIS 7319 (6th Cir. 2025) (plaintiff failed to state a Title VII claim for national origin discrimination because she did not allege that she belonged to any other nation or group); *Tum-Re El v. Keel*, No. 3:15-cv-2708, 2016 U.S. Dist. LEXIS 68098, at *4 (N.D. Ohio May 7, 2016) (plaintiff's claim for national origin discrimination failed because he did not allege any country that was his place of origin other than the United States).

Plaintiff's theory also reflects a broader inconsistency that warrants noting. Plaintiff—and others advancing similar theories—readily invoke federal law when they believe it provides a basis for relief yet retreat from that same legal framework when it imposes obligations they would rather avoid. Plaintiff has repeatedly employed this approach in this District, and the Court will not indulge such a convenient relationship to the law. Federal law is not an à la carte menu from which

a litigant may select the provisions that suit her while declaring the rest inapplicable based on a fantastical legal theories. Plaintiff's Title VII national origin claim fails as a matter of law.

Moreover, even if Plaintiff had alleged membership in a protected class, her discrimination claim under Title VII would still fail because there are no allegations in the FAC that she exhausted her administrative remedies before filing suit. *Jones v. Johnson*, 707 Fed. Appx. 321, 329 (6th Cir. 2017) ("As noted above, to bring a discrimination claim under Title VII, a plaintiff must first exhaust her administrative remedies."). Accordingly, Plaintiff's Count Five fails to state a claim for relief and must be **DISMISSED**.

**f. Count Six: Attempted Subornation of Perjury**

Plaintiff's sixth claim for "Attempted Subornation of Perjury" under 18 U.S.C. § 1622 plainly fails because it is a criminal statute that does not provide a private right of action. *See Cain v. MDOC*, No. 1:07-cv-54, 2008 U.S. Dist. LEXIS 119146, at *10 n.4 (2008) ("[C]riminal statutes do not create private rights of action unless Congress expressly so provides."). In addition, no civil claim for perjury or subornation of perjury exists under federal, Tennessee, or North Carolina law. *See Cross v. Perry*, No. 3:14-cv-794-DJH, 2015 U.S. Dist. LEXIS 50601, at *8 (W.D. Ky. Apr. 17, 2015) ("However, there is no cognizable civil cause of action for perjury under federal law."); *Liu v. Lancer Ins. Co.*, No. 3:24-cv-00641, 2024 U.S. Dist. LEXIS 203944, at *13 (M.D. Tenn. Nov. 8, 2024) ("It is 'well-settled that Tennessee does not recognize a civil action for perjury.'" (internal citation omitted)); *Gilmore v. Gilmore*, 229 N.C. App. 347, 351 (N.C. Ct. App. 2013) ("It is well established in North Carolina that neither perjury nor subornation of perjury may form the basis for a civil action.").

Accordingly, Plaintiff's Count Six fails to state a claim for relief and must be **DISMISSED**.

**g. Count Seven: Retaliation Under Title VII**

Plaintiff's claim for retaliation under Title VII fails for similar reasons as her discrimination claim did. Primarily, she failed to exhaust her administrative remedies with the EEOC. *See Doney v. Dejoy*, No. 5:20-cv-02447, 2023 U.S. Dist. LEXIS 55594, at *30 (N.D. Ohio Mar. 30, 2023) ("Prior to filing a claim of retaliation in federal court under Title VII, an employee must exhaust all administrative remedies with the EEOC.").

Plaintiff also does not plausibly allege that she "engaged in activity protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (listing elements of Title VII retaliation). While "opposing any practice that the employee reasonably believes to be in violation of Title VII" constitutes protected activity, *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000), Title VII does not protect the "right to determine [Plaintiff's] own tax status." *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Circuit 2008) ("[Protected activity] covers conduct such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer--e.g., former employers, union, and co-workers.'" (internal citation omitted)). In the absence of any allegation as to Plaintiff's national origin, the Court cannot reasonably infer her purported tax status was a proxy for national origin. Just like many employers routinely do across the country when hiring new employees, Defendant requested Plaintiff to submit, among other things, a Form W-4 and a valid social security number. [Doc. 1 at Ex. C; Doc. 17 at ¶¶ 15–23]. Having failed to allege any protected activity under Title VII, Plaintiff's allegations cannot support a Title VII retaliation claim.

Accordingly, Plaintiff's Count Seven fails to state a claim for relief and must be **DISMISSED**.

**h. Count Eight: Interference with Rights Under 42 U.S.C. § 1981**

Plaintiff next asserts a claim under 42 U.S.C. § 1981 alleging that "Defendant's interference with Plaintiff's contractual rights was based on discriminatory animus related to her assertion of rights connected to her national status." [Doc. 17 at ¶ 119]. Section 1981, however, "prohibits intentional *race discrimination* in the making and enforcing of contracts." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (emphasis added). To establish a claim for racial discrimination under section 1981, a plaintiff must allege, among other things, that she "belongs to an identifiable class of person who are subject to discrimination based on their race." *Id.* She makes no allegations at all as to her race or ethnicity, nor does she allege any facts from which the Court could reasonably infer she belongs to a protected class.

Plaintiff's self-proclaimed "tax status," standing alone, cannot be used as a proxy for race, any more than it can for national origin. She does not allege any facts that suggest Defendant intentionally discriminated against her based on race. *See Curry v. Theaker*, No. 22-3435, 2022 U.S. App. LEXIS 35225, at *8 (6th Cir. 2022) (plaintiff failed to assert a viable section 1981 claim because she did not allege any racial discrimination).

Accordingly, Plaintiff's Count Eight fails to state a claim for relief and must be **DISMISSED**.

**i. Count Nine: Conspiracy to Deprive Equal Protection Under 42 U.S.C. § 1985(3)**

Plaintiff's ninth claim for "Conspiracy to Deprive Equal Protection" under 42 U.S.C. § 1985(3) is barred by the intra-corporate conspiracy doctrine. Plaintiff alleges that "multiple corporate officers of Defendant . . . acted in concert to rescind Plaintiff's employment offer based

on her submission of Form W-8BEN and assertion of her right to determine who own tax status." [Doc. 17 at ¶ 125]. Using the intra-corporate conspiracy doctrine, the Sixth Circuit has explained that if "defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Here, Plaintiff has only sued a single corporate entity and has not alleged that any of these corporate officers were acting outside the normal course of their duties that would permit the Court to set the intra-corporate conspiracy doctrine aside. *See Mease v. Washington*, No. 2:20-cv-176, 2021 U.S. Dist. LEXIS 91122, at *15–17 (W.D. Mich. May 13, 2021) ("As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring.").

Moreover, to state a claim under § 1985, the alleged conspiracy "must have been motivated at least in part by race." *See Community Church of Chesterland Ohio v. Penny*, 759 F. Supp. 3d 805, 811 (N.D. Ohio 2024) (cleaned up, citation omitted). Accordingly, Plaintiff's Count Nine fails to state a claim for relief and must be **DISMISSED**.

#### j. Count Ten: Fair Credit Reporting Act Violation

Plaintiff alleges that Defendant violated 15 U.S.C. § 1681b(b)(3)(a) when it "failed to provide Plaintiff with a copy of the consumer report before taking adverse action" and when it "failed to provide Plaintiff with a reasonable period of time between providing the consumer report and taking adverse action." [Doc. 17 at ¶¶ 132–147]. In its Motion to Dismiss, Defendant argues that Plaintiff's Fair Credit Reporting Act ("FCRA") claim fails because she lacks standing to bring an "informational injury" and, even if she does have standing, her claim is substantively deficient. [Doc. 24-1 at 12–16]. Rather than address the constitutional standing issue on the limited briefing

before the Court, the Court agrees with Defendant that, assuming she has standing, Defendant did not violate the FCRA based on the allegations in the FAC and Plaintiff's exhibits.

First, Plaintiff alleges that Defendant failed to provide her a copy of her consumer report and a written description of her rights before taking adverse action. [Doc. 17 at ¶ 142]. Plaintiff, however, previously attached to her original complaint a copy of the cover letter she received from Defendant on May 29, 2025, which expressly provides: "Enclosed please find: (1) a copy of the report we obtained from Checkr; and (2) A Summary of Your Rights Under the Fair Credit Reporting Act." [Doc. 1 at Ex. D[5]]. Plaintiff also attached a copy of the consumer report to her original complaint. [*Id.* at Ex. B]. Plaintiff therefore clearly received the report and a summary of her rights before Defendant sent its termination letter on June 6, 2025. [Doc. 1 at Ex. E]. And "where inconsistency exists between allegations in a complaint and an exhibit, the general rule is that the exhibit controls." *Reynolds v. United States*, No. 3:20-cv-00222, 2022 U.S. Dist. LEXIS 60378, at *8 n.1 (S.D. Ohio Mar. 31, 2022) (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012)). Moreover, Plaintiff even confirms in her response to Defendant's Motion to Dismiss that she "alleges . . . she may have received a copy of the report . . .." [Doc. 25 at 8]. Thus, it is clear that Defendant did not fail to provide Plaintiff with a copy of her consumer report or rights under the FCRA in violation of 15 U.S.C. § 1681b(b)(3)(a).

Second, Plaintiff's claim that Defendant failed to provide her with a reasonable period of time to dispute the information in her report is equally unavailing in light of Plaintiff's exhibits. Plaintiff alleges that on May 30, 2025, one of Defendant's officers told Plaintiff over the phone that Defendant was rescinding the formal offer of employment. [Doc. 17 at ¶ 30]. Yet, Plaintiff attached to her original Complaint Defendant's "Rescinding Offer of Employment Letter" sent to

[5] *See supra*, note 1, at 4 (explaining why the Court is permitted to consider the exhibits Plaintiff attached to her original Complaint).

Plaintiff by email on June 6, 2025, explaining that Defendant "has decided to rescind [Plaintiff's] conditional offer of employment." [Doc. 1 at Ex. E]. In addition, she received the cover letter providing the consumer report and identifying discrepancies on May 29, 2025. [Doc. 1 at Ex. D]. That letter specifically provided: "If we do not hear from you within five (5) business days, we will make our hiring determination based on the information currently available to us." [*Id.*].

These exhibits show that Defendant sent pre-adverse action notice to Plaintiff on May 29, 2025, and provided six business days for Plaintiff to respond before it revoked her offer on June 6, 2025. Most of Plaintiff's own allegations do not contradict this timeline. Indeed, Plaintiff alleges that, during the alleged May 30, 2025, phone call, one of Defendant's officers "initially mentioned a purported five-day period for Plaintiff to provide documentation" but ultimately stated that Defendant "'would rescind the offer' based on the alleged inaccuracies." [Doc. 17 at ¶ 34]. That statement was not a final adverse action, nor was it inconsistent with the subsequent revocation of the offer. Defendant had informed Plaintiff—the day before on May 29, 2025—that the information she provided contained discrepancies and that it was "considering taking action" unless those discrepancies could be satisfactorily explained. [*See* Doc. 1 at D]. Thus, Defendant's statement to Plaintiff on the May 30, 2025, phone call that it "would rescind the offer" merely communicated the consequence that would follow if Plaintiff failed to adequately resolve those discrepancies.

Based upon Plaintiff's own allegations and attached exhibits, she received six business days to respond before Defendant took adverse action. Courts have found five business days sufficient to meet the reasonable time requirement under the FCRA. *Wright v. Lincoln Prop. Co.*, No. CV 15- 3483, 2017 WL 386602, at *3 (E.D. Pa. Jan. 27, 2017) ("Congress focused on a five day possible floor."); *Reardon v. ClosetMaid Corp., No*. 2:08-CV-01730, 2013 WL 6231606, at

*13 (W.D. Pa. Dec. 2, 2013) ("[A] reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer."). Plaintiff therefore does not plausibly allege that Defendant violated the FCRA by failing to provide her a reasonable amount of time to dispute the information in her consumer report before taking adverse action. More obviously, Plaintiff does not actually dispute the information in the report, instead attributing it to an error by an AI resume tool. [*See* Doc. 17 at ¶ 32].

Accordingly, Plaintiff's Count Ten fails to state a claim for relief and must be **DISMISSED**.

**k. Count Eleven: Interference with Administration of Internal Revenue Laws**

Plaintiff next alleges a violation of 26 U.S.C. § 7212, which involves threatening or intimidating a federal officer. [Doc. 17 at ¶¶ 148–55]. Not only does Plaintiff fail to allege that she is a federal officer, but section 7212 is a criminal statute that does not provide a private right of action. *See Jones v. State*, No. 3:21-CV-123-KAC-DCP, 2022 U.S. Dist. LEXIS 168667, at *17 (E.D. Tenn. Sept. 19, 2022) (dismissing the plaintiff's § 7212 claim as it does not provide a basis for a private cause of action in a civil suit).

Accordingly, Plaintiff's Count Eleven fails to state a claim for relief and must be **DISMISSED**.

**l. Count Twelve: Intentional Infliction of Emotional Distress**

Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED"), alleging that Defendant's conduct—including requiring her to submit a Form W-4 and confronting her about discrepancies in her resume—was outrageous and caused her "serious mental injury." [Doc. 17 at ¶¶ 156–62]. The claim is entirely without merit.

Under Tennessee law, the elements of an IIED claim are that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018). Nothing about Defendant's conduct can be characterized as "outrageous." And courts within this District regularly dismiss IIED claims premised on the termination of an actual employment relationship, to say nothing of the recission of a conditional offer of employment. *See Brady v. WestRockServices, Inc.*, No. 1:17-cv-84, 2017 WL 11607030, *3 (E.D. Tenn. Dec. 28, 2017) ("Federal district courts in Tennessee consistently dismiss intentional infliction of emotional distress claims where the claim arises only out of the termination of employment.").

Plaintiff's IIED claim warrants no further discussion. Her Count Twelve fails to state a claim for relief and must be **DISMISSED**.

**m. Count Thirteen: Tennessee Human Rights Act Violation**

Plaintiff alleges a violation of the Tennessee Human Rights Act ("THRA") premised on the same national origin theory she advanced to support her Title VII claim. [Doc. 17 at ¶¶ 163–74]. But it too fails because Plaintiff has not alleged that Defendant discriminated against her based on her national origin. Tennessee and federal courts "treat employment discrimination claims under the Tennessee Humans Right Act and Title VII as coterminous, applying United States Supreme Court and Sixth Circuit Title VII precedents to claims under the Tennessee law." *Treadwell v. Am. Airlines, Inc.*, 447 Fed. Appx. 676, 677–78 (6th Cir. 2011). For the same reasons that her Title VII claim fails, Plaintiff's THRA claim must also fail.

Accordingly, Plaintiff's Count Thirteen fails to state a claim for relief and must be **DISMISSED**.

**n. Count Fourteen: Negligent Hiring, Training, and Supervision**

Plaintiff next alleges that Defendant failed to adequately train its human resource personnel regarding Plaintiff's use of the W-8BEN Form, her purported right to "determine [her] own tax status," and the requirements of the FCRA. [Doc. 17 at ¶¶ 175–80]. Plaintiff's negligent hiring, training, and supervision claim is conclusory and devoid of any factual basis.

"Tennessee law recognizes a claim for the negligent training of employees, and also recognizes claims for negligent hiring, supervision or retention of an employee if a plaintiff establishes, in addition to the elements of a negligence claim, that *the employer had knowledge of the employee's unfitness for the job*." *Davis v. Sunrise Transp. Express, Inc.*, No. 3:24-cv-00308, 2024 U.S. Dist. LEXIS 95269, *5 (M.D. Tenn. May 29, 2024) (emphasis in original) (cleaned up). That Defendant's HR personnel were confused by Plaintiff's misguided legal theories and submission of a W-8BEN form does not show that they were unqualified to perform their duties. Nor does Plaintiff allege Defendant had any knowledge of a purported lack of qualification. Plaintiff's allegations in this regard are "nothing more than a 'formulaic recitation of the elements' of a negligent hiring, supervision, and training claim." *Id.* at *7 (citing Turnage v. Oldham, 346 F. Supp. 3d 1141, 1158 (W.D. Tenn. Oct. 15, 2018)). Based on the allegations throughout Plaintiff's FAC and her puzzling beliefs regarding her tax status, it was entirely reasonable for Defendant's human-resource personnel to respond in the manner they did.

Accordingly, Plaintiff's Count Fourteen fails to state a claim for relief and must be **DISMISSED**.

**o. Count Fifteen: Defamation**

Plaintiff's claim for defamation is similarly unfounded. She alleges Defendant defamed her by "characterizing minor resume discrepancies as raising 'red flags' concerning Plaintiff's 'integrity and accuracy,'" "stating in the recission letter dated June 6, 2025, that Plaintiff provided 'false information on the resume,'" and "communicating these false characterizations to third parties." [Doc. 17 at ¶¶ 181–87]. None of these statements constitute defamation under Tennessee law.

"To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). Importantly, "[t]ruth is an absolute defense concerning a defamation claim." *Bernard v. Sumner Reg'l Health Sys.*, No. M2000-01478-COA-R3-CV, 2002 Tenn. App. LEXIS 213, at *11 (Tenn. Ct. App. 2002) (citation omitted). Plaintiff acknowledges and admits to the discrepancies identified by Defendant, but claims they were due to "an error generated by an AI resume tool." [Doc. 17 at ¶ 32]. She affirmatively concedes the accuracy of Defendant's statements regarding the discrepancies, so there is no "false information" and the statements cannot be defamatory. And, although Plaintiff may disagree with Defendant's characterization of those discrepancies as "red flags," that is a matter of opinion, which cannot serve as the basis for a defamation claim. *See Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 775 (M.D. Tenn. 2011) ("[W]here a speaker can only be understood as expressing an opinion…the statement is not actionable.").

Accordingly, Plaintiff's Count Fifteen fails to state a claim for relief and must be **DISMISSED**.

**p. Count Sixteen: Fraudulent Misrepresentation**

Plaintiff alleges that Defendant made "material misrepresentations" to Plaintiff regarding her submission of the W-8BEN Form. [Doc. 188–94]. However, to successfully assert a claim for intentional misrepresentation under Tennessee law, a plaintiff must prove, among other things, that the "representation was false when made." *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). Under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff fails to specifically identify the time and place of these material representations and the identity of who made them. *See Hill v. Ardent Health Servs.*, 806 F. Supp. 3d 711, 715 (M.D. Tenn. Oct. 15, 2025) ("Claims that sound in fraud must meet Rule 9(b)'s heightened pleading standard.").

In any event, Plaintiff's own allegations are inconsistent, as she claims Defendant's human-resource personnel concocted a grand scheme to terminate her based on her submission of the W-8BEN Form but that those same individuals expressed "confusion" and a "lack of understanding" concerning the form. [Doc. 17 at ¶ 19]. In fact, Plaintiff alleges that Defendant's human-resource personnel worked with Plaintiff in an attempt to ger her to submit the "correct" tax forms on Plaintiff's scheduled start date. [*Id.* at ¶ 21]. Without facts particularly showing what statements were made that were false, Plaintiff does not state a viable claim for fraudulent misrepresentation.

Accordingly, Plaintiff's Count Sixteen fails to state a claim for relief and must be **DISMISSED**.

**q. Count Seventeen: Negligent Misrepresentation**

Plaintiff's seventeenth and final claim for negligent misrepresentation fails on its face, as such a claim is unavailable in this context. "[T]he Tennessee Supreme Court has consistently

limited the tort to instances where business or professional persons have provided false information in guidance of business transactions." *Moore v. Alstom Power Turbomachines, LLC*, No. 1:12-CV-292, 2013 WL 915555, at *6 (E.D. Tenn. Mar. 7, 2013) (finding negligent misrepresentation claim "unavailable to plaintiffs in the employer-employee context"). Plaintiff does not allege that Defendant acted in this sort of role – as one providing guidance on a business transaction. Nor has Plaintiff alleged that Defendant "supplied information to plaintiff" and that "the information was false." *Stanfill v. Mountain*, 301 S.W.3d 179, 188 (Tenn. 2009) (listing elements of negligent misrepresentation claim). To the contrary, she alleges Defendant failed to provide certain information by extending a conditional offer of employment without disclosing that she would have to submit certain tax documents to secure that employment.

Accordingly, Plaintiff's Count Seventeen fails to state a claim for relief and must be **DISMISSED**.

## IV. LEAVE TO AMEND

Plaintiff suggests in her Response brief that she should be granted leave to amend. [Doc. 25 at 14]. She argues that if the Court finds any deficiencies in the Complaint, the proper remedy is not dismissal with prejudice, but amendment. Notably, Plaintiff has already filed an amended complaint in this action. [Doc. 17]. Because Plaintiff has not filed a proper motion to amend, has not submitted a proposed complaint, and the deficiencies of the Complaint are not curable by amendment, her request for leave to amend will be **DENIED**.

First, the Local Rules require that any motion to amend be accompanied by a copy of the proposed amended pleading. E.D. Tenn. Loc. R. 15.1. Plaintiff did not file a motion to amend or a proposed amendment. She is not entitled to an advisory opinion on the sufficiency of her FAC so that she may reframe or correct her claims. The Court's Order Governing Motions to Dismiss

[Doc. 5] requires the parties to confer before a Rule 12(b) motion is filed precisely for this reason: so the parties can determine "if the defect is likely to be cured by filing an amended pleading." [*Id.*]. Defendant certified – and Plaintiff does not dispute – that the parties conferred "to determine whether an amendment could cure the defects" and were "unable to agree that Plaintiff's First Amended Complaint is curable by permissible amendment." [Doc. 24 at 1]. In addition, Plaintiff filed a response in opposition [Doc. 25] and a Motion for Status Conference and Scheduling Order [Doc. 29] requesting the Court to rule on Defendant's Motion. Having filed all these materials in connection with the Motion to Dismiss, Plaintiff cannot also claim that the Court should refrain from ruling on it and allow an undisclosed amendment instead. "What plaintiff[] may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000).

In so holding, the Court recognizes that, "consistent with the liberal treatment afforded to *pro se* plaintiffs," district courts should ordinarily "afford *pro se* plaintiffs special consideration when granting leave to amend complaints." *Rashada v. Flegel*, 2024 WL 1367436, *4 (6th Cir. April 1, 2024) (*sua sponte* dismissal inappropriate where deficiency was curable and only basis for dismissal without leave to amend was jurisdictional); *Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986) ("Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable.").

But "[w]hen a deficiency cannot be cured, leave to amend is not required." *Banks v. Ryan*, 2025 WL 2017879, *3 (W.D. Tenn. July 18, 2025) (defendants entitled to dismissal of frivolous complaint despite procedurally improper request to amend). And "[w]here a complaint is 'totally

implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion,' the district court need not afford the plaintiff an opportunity to amend the complaint." *Russell v. Vittands*, 79 F. App'x 859, 860 (6th Cir. 2003) (*citing Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)); *Stephens v. Santander Consumer USA, Inc.*, 2020 WL 1874117, *3 (W.D. Tenn. April 15, 2020) (leave to amend unwarranted where complaint was premised on attempt pay debt with "self-created promissory note").

The overwhelming majority of Plaintiff's Complaint is meritless. While Plaintiff has attempted to distance herself from the language associated with the sovereign citizen-style beliefs she has espoused in other cases in this District, the allegations in her FAC demonstrate that those beliefs largely underpin her claims. The Court has diligently endeavored to separate her factual allegations and recognizable causes of action from her invalid legal theories, but the Court's resources are finite, and it cannot devote endless hours to dispelling conspiracy theories and homespun legal fictions. And unlike much of the Sixth Circuit caselaw addressing the propriety of amendment for pro se litigants, dismissal here is not *sua sponte* – Defendants explicitly sought dismissal with prejudice and without leave to amend. [Doc. 24-1 at 2]. Plaintiff was on notice of Defendant's position that amendment was unwarranted and why, and had the opportunity to respond to those arguments.

Plaintiff has not moved to amend and has not submitted a proposed amended pleading. Her claims are entirely meritless. Amendment is unwarranted, and Plaintiff's request for leave to amend will be **DENIED**.

## V. CONCLUSION

Accordingly, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 24] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

Plaintiff's Motion for Status Conference and Scheduling Order [Doc. 29] is **DENIED AS MOOT**.

**SO ORDERED.**

*<u>/s/ Charles E. Atchley, Jr.</u>*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**